**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UFCW Local One Health Care
Fund and its Trustees et al.,**

                    **Plaintiffs,**

                **v.**

**JJR II, Inc. d/b/a Great American
0804,**

                    **Defendant.**
_____

**6:18-cv-1200
(GLS/ATB)**

**APPEARANCES:**

**FOR THE PLAINTIFFS:**
Slevin, Hart Law Firm
1625 Massachusetts Avenue, N.W.
Suite 450
Washington, DC 20036

**FOR THE DEFENDANT:**

**OF COUNSEL:**

ALEXANDER M. GORMLEY,
ESQ.

NO APPEARANCE

**Gary L. Sharpe
Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiffs UFCW Local One Health Care Fund (hereinafter "the Health Fund"), the Health Fund's Trustees,[1] UFCW Local One Pension Fund (hereinafter "the Pension Fund"), and the Pension Fund's Trustees[2] brought this action against defendant JJR II, Inc. (JJR II) doing business as Great American 0804. (Compl., Dkt. No. 1 at 1.) Plaintiffs seek a judgment against JJR II for delinquent contributions including withdrawal liability—as well as associated interest, liquidated damages, attorney's fees, and costs—pursuant to the Employee Retirement Income Security Act (ERISA)[3]. (*Id.* ¶ 1.) After JJR II failed to appear, plaintiffs filed a request for entry of default on November 13, 2018, (Dkt. No. 6), and the Clerk entered the default the next day, (Dkt. No. 7). Pending is plaintiffs' motion for default judgment. (Dkt. No. 9.) For the following reasons,

---

[1] Frank C. DeRiso, I. Stephen Davis, Gregory P. Gorea, Robert Ciancaglini, Raymond Wardynski, Roger Hemmitt, Joseph L. Sahlen, and David Pardi.

[2] Frank C. DeRiso, Gregory Gorea, Robert Boehlert, Mark Manna, and Michael R. Bull.

[3] *See* 29 U.S.C. §§ 1001-1461.

2

plaintiffs' motion is granted.

## II. **Background**

Plaintiffs allege the following. Both the Health Fund and the Pension Fund are multiemployer benefit plans within the meaning of 29 U.S.C. §§ 1002(1), 1002(3), and 1002(37); they are intended to provide health and retirement benefits, respectively, to eligible employees. (Compl. ¶¶ 5, 8.) The United Food and Commercial Workers District Local One (a union) and JJR II were parties to a collective bargaining agreement (hereinafter "the CBA"), which obligated JJR II to make contributions to both the Health Fund and the Pension Fund. (*Id.* ¶¶ 5, 8, 16.)

The Health Fund conducted an audit of JJR II for the period of January 1, 2012 through December 31, 2012 and determined that JJR II owed it $13,075.59 in unpaid contributions. (*Id.* ¶ 21.) After the audit findings were revised, the amount was determined to be $5,972.00, of which JJR II still owes $2,472.00 after partial payment. (Dkt. No. 9, Attach. 1 at 3-4.)[4] In the same vein, the Pension Fund conducted a payroll audit of

---

[4] The complaint sought $13,075.59. (Compl. ¶ 37.) As plaintiffs note, there is no prejudice to JJR II because a lower amount is now sought. (Dkt. No. 9, Attach. 1 at 4 n.1); *cf. Silge v. Merz*, 510 F.3d 157, 159-60 (2d Cir. 2007).

the same period and determined JJR II owed it $8,741.20 in unpaid contributions, (Compl. ¶ 22), and later revised that amount to $2,501.17, of which JJR II still owes $1,501.70 after partial payment, (Dkt. No. 9, Attach. 1 at 3-4).[5]

A second audit by the Pension Fund revealed that JJR II owed it another $515.80 in unpaid contributions for the period of January 1, 2015 through December 31, 2015. (Compl. ¶ 22.) JJR II also failed to increase its total contributions to the Pension Fund in 2015 as required by the CBA, resulting in an additional delinquency of $1,159.60. (*Id.* ¶ 23.)

The Pension Fund also determined that, on or about January 31, 2018, JJR II effected a "'complete withdrawal'" from the Pension Fund under 29 U.S.C. § 1383(a). (*Id.* ¶ 26; Dkt. No. 9, Attach. 12 at 2.) On or about February 15, 2018, the Pension Fund notified JJR II that, as a result of that determination, JJR II owed "withdrawal liability" in the amount of $325,490.00 and provided an installment payment schedule, with the first installment due April 15, 2018. (Compl. ¶ 29.)

JJR II did not make the first required payment. (*Id.* ¶ 30.) On May 8,

---

[5] The complaint sought $8,741.20. (Compl. ¶ 41.) Again, there is no prejudice to JJR II because plaintiffs now seek a lower amount. (Dkt. No. 9, Attach. 1 at 4 n.1); *cf. Silge*, 510 F.3d at 159-60.

4

2018, the Pension Fund notified JJR II that it was delinquent in its withdrawal liability payment and would be in default—meaning the entire amount of withdrawal liability would become due—if JJR II did not pay within sixty days. (*Id.* ¶ 31.) JJR II failed to make any withdrawal liability payments. (*Id.* ¶ 32.)

According to plaintiffs, JJR II owes the Health Fund $3,251.93 in damages: $2,472.00 in delinquent contributions, $285.53 in interest, and $494.40 in liquidated damages, as well as an additional $5,362.14 in attorney's fees and costs. (Dkt. No. 9, Attach. 1 at 10-11.) Plaintiffs also allege that JJR II owes the Pension Fund $406,456.72 in damages: $3,177.10 in delinquent contributions, $416.39 in interest (on the delinquent contributions), $635.42 in liquidated damages (on the delinquent contributions), withdrawal liability in the amount of $325,490.00, $11,639.81 in interest (on the withdrawal liability), and $65,098.00 in liquidated damages (on the withdrawal liability), as well as an additional $22,476.69 in attorney's fees and costs. (*Id.* at 11.)

### III. Discussion

After the clerk has filed an entry of default against a party that has failed to plead or otherwise defend, a court may enter default judgment

5

upon application of the opposing party. *See* Fed. R. Civ. P. 55(b). Default judgment is ordinarily justified when a party fails to respond after receiving proper notice. *See Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). After an entry of default, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc., v. Alcantara*, 183 F.3d 151, 155 (2d. Cir. 1999) (internal citations omitted). A court must ascertain damages with reasonable certainty. *See Transatlantic*, 109 F.3d at 111. "[I]t [is] not necessary for the . . . [c]ourt to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Id.* (internal quotation marks and citations omitted).

**A.    Liability**

Here, JJR II failed to appear despite being properly served, (Dkt. No. 5), and the Clerk filed an entry of default, (Dkt. No. 7). Therefore, the court deems as true all of the well-pleaded allegations in plaintiffs' complaint

6

regarding liability. *See Transatlantic*, 109 F.3d at 108.

Plaintiffs claim that JJR II violated 29 U.S.C. § 1145 as to both the Health Fund and the Pension Fund. (Compl. ¶¶ 38, 42.) 29 U.S.C. § 1145 states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Upon review of the complaint and plaintiffs' motion for default judgment including all of the attached declarations and exhibits, (Dkt. No. 9), plaintiffs have established liability under 29 U.S.C. § 1145. Specifically, plaintiffs have sufficiently alleged that JJR II (1) is an "employer" as defined in 29 U.S.C. § 1002(5), (Compl. ¶ 13), and (2) is obligated to make contributions to two multiemployer plans—the Health Fund, (*id.* ¶ 5), and the Pension Fund, (*id.* ¶ 8)—under the terms of the CBA, (*id.* ¶¶ 16, 19). Further, plaintiffs have alleged that JJR II was delinquent in making monthly contributions to both the Health Fund and the Pension Fund in violation of the CBA. (*Id.* ¶¶ 21-24; Dkt. No. 9, Attach. 1 at 3-4 & n.1); *see UFCW Local One Pension Fund v. Natoli Indep. Retailers, Inc.*, No. 6:12–CV–682, 2012 WL 4793500, at *3 (N.D.N.Y. Oct. 9, 2012).

7

Plaintiffs have also sufficiently established that JJR II made a "complete withdrawal" from the Pension Fund as defined by ERISA. *See* 29 U.S.C. § 1383(a) ("[A] complete withdrawal from a multiemployer plan occurs when an employer . . . permanently ceases all covered operations under the plan."); (Compl. ¶ 26 (alleging complete withdrawal); Dkt. No. 9, Attach. 12 at 2 (describing JJR II's cessation of operations).) The Pension Fund notified JJR II of (1) its withdrawal liability, (2) an installment payment schedule, and (3) the first payment due April 15, 2018, all in compliance with the notification requirements of 29 U.S.C. § 1399(b). (Compl. ¶¶ 28-29.) Plaintiffs also allege that JJR II did not make that first payment and failed to cure the delinquency within sixty days of notification. (*Id.* ¶¶ 31-32.) Thus, JJR II defaulted pursuant to 29 U.S.C. § 1399(c)(5)(A), and the Pension Plan was entitled to require immediate payment of the outstanding amount of JJR II's withdrawal liability. *See* 29 U.S.C. § 1399(c)(5); *Natoli*, 2012 WL 4793500, at *3.

Furthermore, plaintiffs have established that JJR II is liable, under 29 U.S.C. § 1132(g)(2), for interest, liquidated damages, and reasonable attorney's fees and costs. (Compl. ¶¶ 16-18, 39, 43, 48); *see UFCW Local One Pension Fund v. Anami Foods, LLC*, No. 6:12–CV–632, 2013 WL

8

139915, at *2 (N.D.N.Y. Jan. 10, 2013).

**B.     Damages**

   *1.     The Health Fund*

      a.     Unpaid Contributions

Because JJR II violated 29 U.S.C. § 1145 as to its delinquent contributions, the Health Fund is entitled to receive as damages the amount of unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A). Plaintiffs submitted a declaration from the Health Fund's Administrative Director, who has personal knowledge of the facts of this case. (Dkt. No. 9, Attach. 2 ¶ 1.)[6] This declaration states that JJR II owes the Health Fund $2,472.00 in unpaid contributions for the period of January 1, 2012 through December 31, 2012, (*id.* ¶ 13; Attach. 17 ¶¶ 1-2), which the court awards to the Health Fund.

      b.     Interest on Unpaid Contributions

The Health Fund is also entitled to receive interest on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B). Under the CBA, JJR II owes interest at a rate of eight percent per year, calculated from the date

---

[6] Plaintiffs also submitted a declaration from the Funds Auditor. (Dkt. No. 9, Attach. 17.)

the contributions are due until the date paid. (Dkt. No. 9, Attach. 2 ¶¶ 3-6, 8.) Plaintiffs' documentation states that JJR II owes interest, calculated through December 14, 2018, of $285.53, (*id.* ¶ 16; Attach. 8), which the court awards to the Health Fund.

   c. *Liquidated Damages*

29 U.S.C. § 1132(g)(2)(C) entitles the Health Fund to liquidated damages, so long as they do not exceed twenty percent of the unpaid contributions. The CBA provides for twenty percent. (Dkt. No. 9, Attach. 2 ¶¶ 3-6, 9.) Twenty percent of the unpaid contributions is $494.40, (*id.* ¶ 17(c); Attach. 8), and thus the court awards $494.40 in liquidated damages to the Health Fund.

  2. *The Pension Fund*

   a. *Unpaid Contributions, Including Withdrawal Liability*

As JJR II violated 29 U.S.C. § 1145, the Pension Fund is entitled to receive as damages the amount of unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A). Moreover, JJR II's failure to make withdrawal liability payments when due should also be treated as a contribution delinquency under 29 U.S.C. § 1145. *See* 29 U.S.C. § 1451(b). The declaration of the Pension Fund's Administrative Director states that JJR II owes the Pension

Fund $1,501.70 in unpaid contributions for the period of January 1, 2012 through December 31, 2012, (Dkt. No. 9, Attach. 2 ¶ 13; Attach. 9), and $515.80 for January 1, 2015 through December 31, 2015, (*id.*, Attach. 2 ¶ 14; Attach. 9). JJR II also owes the Pension Fund $1,159.60 for delinquent true-up contributions. (*Id.*, Attach. 2 ¶ 21-22; Attach. 11.) Additionally, JJR II owes $325,490.00 for failing to pay for its withdrawal liability. (*Id.*, Attach. 2 ¶ 26-30; Attach. 16.) Accordingly, the court awards $328,667.10 in unpaid contributions to the Pension Fund.

    b.  *Interest on Unpaid Contributions*

Like the Health Fund, the Pension Fund is entitled to receive interest of eight percent on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B); (Dkt. No. 9, Attach. 2 ¶¶ 3-6, 8.) Plaintiffs' documentation states that JJR II owes interest, calculated through December 14, 2018, of $12,056.21. (*Id.* ¶¶ 20(b), 25(b), 38(b); Attachs. 9, 11, 16).[7] Therefore the court awards $12,056.21 in interest to the Pension Fund.

---

[7] The $12,056.21 total is comprised of the following: $271.78 in interest for the unpaid contributions for 2012 and 2015, (Dkt. No. 9, Attach. 9), $144.62 in interest for the delinquent true-up contributions, (*id.*, Attach. 11), and $11,639.81 in withdrawal liability interest, (*id.*, Attach. 16). The court notes that plaintiffs totaled the interest for the 2012 and 2015 unpaid contributions as $271.77. (*Id.*, Attach. 9.) The court assumes that this is an arithmetic/clerical error, as the correct total is $271.78. (*Id.*)

### c.    *Liquidated Damages*

Also like the Health Fund, the Pension Fund is entitled to liquidated damages of twenty percent.  *See* 29 U.S.C. § 1132(g)(2)(C); (Dkt. No. 9, Attach. 2 ¶¶ 3-6, 9.)  Twenty percent of the total unpaid contributions is $65,733.42.  (Dkt. No. 9, Attach. 2 ¶¶ 20(c), 25(c), 38(c); Attachs. 9, 11, 16.)[8]  Thus the court awards $65,733.42 in liquidated damages to the Pension Fund.

### 3.    *Attorney's Fees and Costs*

Under 29 U.S.C. § 1132(g)(2)(D), plaintiffs are entitled to reasonable attorney's fees and costs, and the CBA provides for them.  (Compl. ¶¶ 16-18.)  The Second Circuit employs a "presumptively reasonable fee" standard[9] to determine the amount of reasonable attorney's fees to award.

---

[8] The $65,733.42 total is comprised of the following: $403.50 in liquidated damages for the unpaid contributions for 2012 and 2015, (Dkt. No. 9, Attach. 9), $231.92 in liquidated damages for the delinquent true-up contributions, (*id.*, Attach. 11), and $65,098.00 in withdrawal liability liquidated damages, (*id.*, Attach. 16).

[9] This standard is also known as the "lodestar."  *Greathouse v. JHS Sec. Inc.*, 735 F. App'x 25, 26 (2d Cir. 2018).  One Second Circuit panel abandoned the use of the term "lodestar."  *Arbor Hill*, 522 F.3d at 190 & n.4 ("While we do not purport to require future panels of this court to abandon the term—it is too well entrenched—this panel believes that it is a term whose time has come.")  The Supreme Court, however, has used the term since *Arbor Hill*.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotation marks omitted); *Natoli*, 2012 WL 4793500, at *5.[10] That is,

> the district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate[,] . . . [which] is the rate a paying client would be willing to pay. In determining [t]hat rate[,] the district court should consider, among others, the *Johnson* factors[11]; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190 (italicization and footnote added). Generally, a district court relies on the prevailing hourly rate from the district in which it sits, *see id.*, as courts with similar cases to this one have done, *see, e.g.*,

---

U.S. 542, 546 (2010).

[10] Although plaintiffs' motion is unopposed, the court must examine the reasonableness of the requested attorney's fees and costs. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 190 (2d Cir. 2015).

[11] The *Johnson* factors are found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

13

*Bd. of Trs. of Laborers Pension Fund of Local Union No. 186 v. Casale Constr. Servs., Inc.*, No. 1:18-CV-583, 2018 WL 6047825, at *3-4 (N.D.N.Y. Nov. 19, 2018). A recent Northern District decision surveyed reasonable attorney's fees awarded in ERISA cases and determined that $240 per hour for an experienced attorney and $95 per hour for a paralegal was reasonable. *See Int'l Bhd. of Elec. Workers Local Union No. 1249 Pension and Ins. Funds by Dafor v. S. Buffalo Elec., Inc.*, 5:15-CV-682, 2018 WL 1224469, at *4 (N.D.N.Y. Mar. 8, 2018); *see also Casale*, 2018 WL 6047825, at *4.

Here, the Health Fund requests $5,206.04 in attorney's fees for 19.96 hours, (Dkt. No. 9, Attach. 21 at 6[12]), and the Pension Fund requests $21,864.46 for 79.24 hours, (*id.* at 15, 16). Upon review of the time records, (*id.* at 2-15), the amount of time spent by plaintiffs' attorneys was reasonable. *See Int'l Bhd. of Elec. Workers*, 2018 WL 1224469, at *4. However, the requested hourly rates range from $195 to $460, (*id.* at 6, 15), and those rates are too high. *See Casale*, 2018 WL 6047825, at *3. Taking into consideration the relevant standard and plaintiffs' declaration in

---

[12] Citations to this document refer to the CM/ECF-generated page numbers.

support of attorney's fees, (Dkt. No. 9, Attach. 20), $240 per hour for each attorney and $95 per hour for each paralegal is reasonable. *See Casale*, 2018 WL 6047825, at *4; *Int'l Bhd. of Elec. Workers*, 2018 WL 1224469, at *4. Plaintiffs' declaration offers nothing, aside from the total years of experience each attorney has, to justify their requested rates. (*See generally id.*) Nothing, for instance, is offered to demonstrate the novelty and difficulty of this case; the reputation, ability, or ERISA-related experience of the attorneys; or any other case-specific variable.[13] *See Arbor Hill*, 522 F.3d at 190. Thus, the court awards $3,338.66 in attorney's fees to the Health Fund, (Dkt. No. 9, Attach. 21 at 6), and $14,654.84 in attorney's fees to the Pension Fund, (*id.* at 15).[14]

---

[13] The court recognizes that two of the attorneys, Sharon Goodman and Sarah Sanchez, had over thirty years and eighteen years of experience, respectively. (Dkt. No. 9, Attach. 20 ¶ 3.) However, Alexander Gormley, Garret Traub, and Kristina Salamoun had eight, four, and three years of experience, respectively. (*Id.* ¶¶ 3, 4.) Instead of adjusting upward for the more experienced attorneys and downward for the less experienced attorneys, the court believes a $240 per hour rate for each experienced attorney is reasonable, especially considering the lack of specificity in plaintiffs' declaration in support of attorney's fees. (*See generally id.*); *see also Casale*, 2018 WL 6047825, at *3-4 (applying single hourly rate for experienced attorneys); *Int'l Bhd. of Elec. Workers*, 2018 WL 1224469, at *4 (same).

[14] The $3,338.66 consists of $2,387.52 for attorney work (9.948 hours at $240 per hour) and $951.14 for paralegal work (10.012 hours at

The Health Fund requests $156.10 in costs, (*id.* at 7), and the Pension Fund requests $612.23, (*id.* at 16). However, part of the requested costs are LexisNexis charges, which are not recoverable here. *See Casale*, 2018 WL 6047825, at *4-5. Nor are the *pro hac vice* admission fees. (Dkt. No. 9, Attach. 21 at 7, 16); *see Div. 1181 Amalgamated Transit Union—N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 629 (E.D.N.Y. 2017) (surveying case law and declining to award costs for *pro hac vice* admission fees). Thus, the court awards $18.23 in costs to the Health Fund, (Dkt. No. 9, Attach. 21 at 7), and $451.00 in costs to the Pension Fund, (*id.* at 16).

## IV. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for default judgment (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that the Health Fund is entitled to $3,251.93 in damages, $3,338.66 in attorney's fees, and $18.23 in costs; and it is further

---

$95 per hour). (Dkt. No. 9, Attach. 21 at 6.) The $14,654.84 consists of $11,796.48 for attorney work (49.152 hours at $240 per hour) and $2,858.36 for paralegal work (30.088 hours at $95 per hour). (*Id.* at 15.)

**ORDERED** that the Pension Fund is entitled to $406,456.73 in damages, $14,654.84 in attorney's fees, and $451.00 in costs; and it is further

**ORDERED** that the Clerk shall enter judgment in plaintiffs' favor and close this case; and it is further

**ORDERED** that plaintiffs serve a copy of this Memorandum-Decision and Order on JJR II.

**IT IS SO ORDERED.**

March 11, 2019
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge